George GERSHENFELD

v.

The JUSTICES OF THE SUPREME COURT OF PENNSYLVANIA, Honorable Robert N.C. Nix, Jr., Honorable Rolf Larsen, Honorable John P. Flaherty, Honorable James T. McDermott, Honorable William D. Hutchinson, Honorable Stephen A. Zappala, Honorable Nicholas P. Papadakos and the Members of the Disciplinary Board of the Supreme Court of Pennsylvania, John M. Elliott, James C. Swarzman, Professor Winfield Keck, James J. Curren, Jr., Gilbert Helwig, James J. McDonald, Jr., John R. McGinley, James F. Mundy, George F. Douglas, Jr., Byrd R. Brown, Judith Heh, John R. Padova, John A. Tumolo.

Civ. A. No. 86–3473.

United States District Court,
E.D. Pennsylvania.

Aug. 19, 1986.

Samuel C. Stretton, West Chester, Pa., for plaintiff.

Charles W. Johns, Nancy E. Gilberg, Philadelphia, Pa., for Justices of Supreme Court of Pa.

Claudia J. Martin, Philadelphia, Pa., for Members of Disciplinary Bd. of Supreme Court of Pa.

MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court is defendants' motion to stay trial for declaratory judg-

ment and injunctive relief pending disposition of appeal, which this court will consider as a motion to stay the final hearing on those counts of plaintiff's complaint that seek imposition of a permanent injunction and declaratory relief. In order to fully understand the court's ruling on this motion, a review of the brief but important history of this action is necessary.

On April 16, 1986, the Office of Disciplinary Counsel of the Supreme Court of Pennsylvania filed a petition before that court for emergency interim suspension and related relief against attorney George Gershenfeld pursuant to Pennsylvania Rule of Disciplinary Enforcement ("Pa.R.D.E.") 208(f). On May 2, 1986, plaintiff Gershenfeld filed an answer to the petition and a motion to dismiss. On May 28, 1986, without argument or hearing, the Supreme Court of Pennsylvania, pursuant to Pa.R. D.E. 208(f) ordered that plaintiff be suspended from the practice of law, forthwith, and in the words of its order, "until further definitive action by [the Supreme Court of Pennsylvania]." That order also directed plaintiff to immediately notify all of his clients of his suspension and to deliver a list of the names and addresses of all of his clients to the Office of Disciplinary Counsel immediately. At the time of the entry of this order the plaintiff was 65 years of age, had practiced law for 35 years and to the extent disclosed on the record before this court, had never been disciplined as an attorney.

On June 12, 1986, plaintiff filed the present federal action seeking declaratory and injunctive relief from the state court order. A preliminary injunction hearing was held on June 26, 1986, and following argument on the issues this court issued a bench opinion finding Rule 208(f) to be in violation of the Due Process Clause of the Fourteenth Amendment in that the rule did not provide for a *prompt* postdeprivation disposition of the disciplinary charges against plaintiff. Accordingly, this court enjoined the state from enforcing Rule 208(f) which rendered its order of May 28,

1986 suspending plaintiff a nullity. Later that same day at about 4:00 P.M. the court convened a second hearing on defendants' oral motion seeking a stay of the preliminary injunction. Following hearing and argument the court rendered a second bench opinion denying defendants' motion.

The very next day, June 27, 1986, the United States Court of Appeals for the Third Circuit stayed this court's order. The appellate court's order did not set forth its reasons probably because it did not have before it the complete record upon which this court granted the preliminary injunction. In particular, the court of appeals did not have the transcript of the argument upon which this court based its preliminary injunction decision, nor did it have a transcript of the court's second bench opinion setting forth the court's reasons for denying defendants' oral motion for a stay. The reason the court of appeals did not have these materials is because it was not possible to have them transcribed between the time they were made in the district court on June 26th as late as 4:30 P.M. and the time set by the court of appeals for consideration of defendants' motion for a stay.[1]

The June 27th stay order stated, in pertinent part:

Appellant's motion to stay is granted, the matter will be scheduled for a conference *on or before July 2, 1986,* at which time it will be decided ... whether the stay will be continued. (Emphasis added).

Because no conference was called by July 8, 1986, plaintiff filed a motion to dismiss the June 27th stay. On July 9, 1986, the court of appeals entered an order which stated, in pertinent part:

The stay entered on June 27, 1986, will be continued for 30 days in order to afford the Pennsylvania Court system an opportunity to provide George Gershenfeld, Esquire, a hearing.

No further explanation of the type of hearing, or the purpose of the hearing was

---

1. Defendants' motion for a stay was not filed until 4:10 P.M. on June 27th. Plaintiff filed an answer to defendants' stay motion on July 1, 1986, within the time prescribed to file an answer.

provided. The state supreme court, in the face of this unfortunate generalization by the court of appeals as to the nature of the hearing to be afforded the plaintiff, took the position that this court's earlier opinion had been rejected by the court of appeals and the state's position had been correct. Optimism prevailed over common sense and reason as the state concluded that the July 9th order

> ... indicates only that a hearing related to the interim suspension should be provided ... [T]he Circuit Court implicitly reject[ed] this Court's opinion that the required hearing must be one which would facilitate the final disposition of the matter.

*See* Petition of Office of Disciplinary Counsel to Intervene, Misc. No. 86–280 at pp. 3–4. Even though this court does not know for certain what the court of appeals had in mind when it ordered a state hearing without further description, it is inconceivable that it intended such a limited hearing as the state contends. To do so affronts the clear command of *Barry v. Barchi, infra,* which requires a prompt dispositional hearing on the merits of the underlying allegations against the plaintiff in circumstances such as this. The court of appeals could only have intended a full dispositional hearing on the merits of the disciplinary charges included in the petition for emergency interim suspension.

Despite the compelling reasonableness of this view, the Pennsylvania Supreme Court, in response to the court of appeals' July 9th order, entered its own order on July 14, 1986, which stated, in pertinent part:

> [T]he Chairman of the Disciplinary Board of the Supreme Court of Pennsylvania is hereby directed to appoint one (1) member of the Disciplinary Board to conduct a hearing where Disciplinary Counsel shall present evidence demonstrating that the continued practice of law by respondent shall constitute an immediate and substantial public or private harm.

Respondent shall have the right to be present, represented by counsel, cross-examine witnesses, and present evidence demonstrating that his continued practice of law shall not constitute an immediate and substantial public or private harm....

> Following the conclusion of the hearing, a recommendation either that the Order of this Court of May 28, 1986, be continued or rescinded shall be filed with this Court.

> The hearing shall take place forthwith and the recommendation shall be filed with this Court within five (5) days after the hearing or in any event not later than August 1, 1986.

Pursuant to this order, Disciplinary Board member Gilbert J. Helwig was designated to convene the hearing and set forth his recommendation to the Pennsylvania Supreme Court.[2] Hearings were held before Mr. Helwig on July 22, July 23, July 28, and July 29, 1986. In accordance with the state supreme court's order that the recommendation be submitted "not later than August 1, 1986," Mr. Helwig submitted his recommendation to the Supreme Court of Pennsylvania on August 1, 1986.

On the basis of the testimony and evidence presented at these hearings, Disciplinary Board member Helwig concluded, to the surprise of some:

> a. While the evidence may support a determination by the ultimate finder of facts in this matter that Respondent has been guilty of serious violations of disciplinary rules, there are substantial differences in the testimony respecting these matters which could ultimately be determined in Respondent's favor. For this reason, the designated Board Member believes that the evidence does not demonstrate that the continued practice of law by Respondent will cause an immediate and substantial public or private harm.

---

**2.** Plaintiff, through his counsel, objected to the hearing on the grounds that it was not a proper hearing since it was not a hearing that would bring about a final disposition, one way or the other, of the accusations against him. (*See* Affidavit of the Plaintiff ("Aff.") ¶ 31).

b. Rescinding the Order of May 28, 1986 and the restoration of Respondent's right to resume the practice of law will give Respondent the opportunity to undertake to correct and remedy, if necessary, any neglect or other fault which may have occurred regarding legal matters he has been handling for various clients and will avoid the risk of delay in handling such matters which would be presented by the necessity of transferring such matters to other counsel.

c. Continuation of Respondent's suspension could delay or interfere with the prompt initiation and disposition of formal disciplinary proceedings against Respondent, in part because of the issues concerning the procedural propriety of Respondent's suspension which have been raised in pending litigation initiated by Respondent in the Federal Courts. The rescission of the Order of suspension should moot these issues.

d. The rescission of the Order of May 28, 1986 will not have the effect of limiting the power of this Court or any appropriate agency of the Court to determine whether Respondent's past conduct constituted any violation of the disciplinary rules and, if so, what discipline would be appropriate. Further such rescission would not deprive the Court of the power to determine the appropriateness of the imposition of such a suspension, if future matters brought to the attention of Disciplinary Counsel and the Court make such suspension appropriate. In addition, the pendency of formal charges against Respondent should itself have an appropriate deterrent effect upon Respondent's conduct and make it unlikely that resort to future interim suspension would be required.

For the reasons set forth above, it is recommended as follows:

a. That an Order be entered rescinding the Order of May 28, 1986, without prejudice to the right of the Court to reconsider such matter if it should be deemed necessary in the future;

b. That the President Judges of the Court of Common Pleas of Philadelphia County and the United States District Court for the Eastern District of Pennsylvania and the Chief Administrative Judge for the Immigration and Naturalization Service in the Philadelphia and Newark, New Jersey regions be advised of the rescission of the Order of May 28, 1986; and

c. That Disciplinary Counsel be advised to proceed expeditiously with the initiation and prosecution of formal charges against Respondent to be heard before a hearing committee.

*See* Recommendation of Disciplinary Board member, dated July 31, 1986. On August 15, 1986, fifteen days after receiving the recommendation, the Pennsylvania Supreme Court entered an order reinstating plaintiff's license to practice law in the Pennsylvania state court system.

In the meantime, on August 5, 1986, plaintiff filed a motion with the court of appeals requesting that its July 9th stay order of this court's injunction be vacated in light of the Disciplinary Board member's recommendation that attorney Gershenfeld be allowed to resume the practice of law, pending the ultimate outcome of the proceedings on the charges. In response to that motion, defendants responded that the stay should not be vacated because the board member's recommendation was just that, merely a "recommendation," and that the Supreme Court of Pennsylvania was entitled to "review and deliberate the matter." (*See* Appellants' Response to Motion to Dismiss the Stay, dated August 6, 1986). The court of appeals, as of the date of this opinion, has not acted upon attorney Gershenfeld's motion to vacate the stay, but it is not necessary now in any event because the stay expired by its terms on August 8, 1986. Consequently, the stay having expired on August 8, 1986, it is this court's view that the preliminary injunction order is once again in full force and effect and has been so since that date, and is unaffected by the decision of the state, a week later, to reinstate plaintiff.

Surprisingly, notwithstanding all of the above, defendants come before this court again and ask the court this time to contin-

ue the final hearing on the issues of permanent injunction and declaratory relief on the primary ground that it should await disposition of defendants' appeal before the court of appeals. Secondly, defendants contend that they have not been afforded sufficient time to undertake discovery of the plaintiff which they allege would be pertinent to the constitutional issues and injunctive issues which this court will be ruling upon.

In light of the serious constitutional due process issues which underlie the plaintiff's complaint here (as opposed to the merits of the underlying charges of professional misconduct which are before the state court), this court is astonished that defendants would seek to further delay that which plaintiff is clearly entitled to, namely a prompt disposition by the state supreme court of the charges against him. As a matter of fact, as will be seen later in this opinion, there is some doubt that the final detailed complaint against Gershenfeld has even been finally prepared by the Office of Disciplinary Counsel.

## THE REQUIREMENT OF A PROMPT DISPOSITIONAL HEARING

The constitutional issue before the court is whether Rule 208(f) on its face or as applied satisfies the Due Process Clause of the Fourteenth Amendment.

Rule 208(f) grants the Pennsylvania Supreme Court the emergency power to suspend an attorney from the practice of law without a full adverserial hearing.[3] Plaintiff contends that the rule violates his due process rights in two ways. First, the rule does not afford him a hearing prior to suspending his license. Second, even if a *pre*deprivation hearing is not required, the rule is unconstitutional because it does not require a *prompt post*deprivation dispositional hearing.

■ It is undisputed that plaintiff's license to practice law, which has been in place for 35 continuous years, is a property interest sufficient to invoke due process protections. *See Barry v. Barchi,* 443 U.S. 55, 64, 99 S.Ct. 2642, 2649, 61 L.Ed.2d 365 (1979); *Mackey v. Montrym,* 443 U.S. 1, 10 n. 7, 99 S.Ct. 2612, 2616 n. 7, 61 L.Ed.2d 321 (1979). "Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Due process is flexible and calls for such procedural protections as the particular situation demands. *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). Resolution of this inquiry requires consideration of three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

---

**3.** Rule 208(f) provides:

*Emergency interim suspension orders and related relief.* Disciplinary Counsel, with the concurrence of the Board or a reviewing member of the Board, whenever it appears that the continued practice of law by a person subject to these rules is causing immediate and substantial public or private harm in manifest violation of the Disciplinary Rules or the Enforcement Rules, may petition the Supreme Court for injunctive or other appropriate relief. The Court, or any justice thereof, may, after such notice to the respondent-attorney and other parties as may be appropriate in the circumstances, issue such orders to the respondent-attorney, and to such financial institutions or other persons as may be parties to the proceeding, as may be necessary to preserve or recover funds, securities or other valuable property of clients or others which appear to have been misappropriated or mishandled in manifest violation of the Disciplinary Rules, or to rectify or control any manifest violation of the Disciplinary Rules or the Enforcement Rules which is or appears to be otherwise causing immediate and substantial public or private harm. Such orders may require temporary suspension of the practice of law pending definitive action under these rules.

■ The first proposition that emerges from the application of these factors is that plaintiff's emergency suspension pending a full hearing did not, in and of itself, violate plaintiff's due process rights. The case law is clear that where the state has an important interest to protect and probable cause to believe that the plaintiff poses a real and immediate danger to that protected interest, interim or temporary emergency deprivation of a property right "pending a prompt judicial or administrative hearing that would definitively determine the issues" is constitutional. *Barry v. Barchi, supra,* 443 U.S. at 64, 99 S.Ct. at 2649. The guarantee of a prompt dispositional postdeprivation hearing, however, is a critical factor in determining the constitutional validity of the previously invoked interim or temporary deprivation processes. *See Parratt v. Taylor,* 451 U.S. 527, 540, 101 S.Ct. 1908, 1915, 68 L.Ed.2d 420 (1981) (state can only take property interest without predeprivation hearing if "meaningful" opportunity for postdeprivation hearing is afforded); *Mackey v. Montrym,* 443 U.S. 1, 12, 99 S.Ct. 2612, 2617–18, 61 L.Ed.2d 321 (1979) (duration of any potentially wrongful deprivation of a property interest is an important factor in assessing the impact of official action on private interest involved); *Barchi, supra. See also Ritter v. Cohen,* 797 F.2d 119 (3d Cir.1986), where concerning this very issue Judge Adams stated, "The existence of post-termination procedures is relevant to the necessary scope of pre-termination procedures." At 124 (*quoting Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 1495 n. 12, 84 L.Ed.2d 494 (1985)).

■ In the present case, the Pennsylvania Supreme Court based its decision to suspend plaintiff on the contents of a petition for interim emergency suspension and plaintiff's answer thereto. While it is true plaintiff's interest in his property right is substantial, the state's interest in protecting its citizens from negligent or corrupt attorneys outweighs the attorney's private interest. A review of the facts in the petition for emergency interim suspension provides the clear conclusion that if all, or substantially all, of those facts are ulti-

mately shown to be true, probable cause exists to believe that plaintiff has violated certain rules governing attorney discipline. Accordingly, on the condition that plaintiff is afforded a prompt postdeprivation adversarial hearing that would finally determine the charges made against plaintiff, suspension of the plaintiff prior to a hearing would not violate the Due Process Clause. However, a determination that the postdeprivation procedures were unsatisfactory could relate back and invalidate the sufficiency of the predeprivation as well. *See Mackey v. Montrym,* 443 U.S. 1, 12–13, 99 S.Ct. 2612, 2617–19, 61 L.Ed.2d 321 (1979); *Fusari v. Steinberg,* 419 U.S. 379, 389, 95 S.Ct. 533, 540–41, 42 L.Ed.2d 521 (1975).

The Supreme Court of the United States has made it clear that when the state deprives an individual of a property right without a hearing it must assure a "prompt [postdeprivation] proceeding *and prompt disposition* of the outstanding issues between [the individual] and the [s]tate." *Barchi, supra,* 443 U.S. at 66, 99 S.Ct. at 2650 (emphasis added).

In *Barchi, supra,* a case almost identical to the present action, the Supreme Court construed a New York statute which defined the disciplinary powers of the state harness racing commission. Under the statutory scheme, the commission was empowered, in the event that a post-race urinalysis indicated that a horse had been drugged, to summarily suspend the trainer of that horse who held his license from the state. The statute entitled the suspended licensee to a postsuspension hearing, but further provided that "[p]ending such hearing and final determination thereon, the action of the [Board] in ... suspending a license ... shall remain in full force and effect." The statute provided no time in which the hearing must be held, and afforded the licensing authority as long as thirty days after the conclusion of the hearing in which to issue a final order adjudicating a case. After rejecting the licensee's contention that he was entitled to a presuspension hearing, the Court concluded that the statute was nevertheless unconstitutional because it failed to assure the li-

censee a prompt final disposition of the charges. The Court concluded:

> That the State's presuspension procedures were satisfactory, however, still leaves unresolved how and when the adequacy of the grounds for suspension is ultimately to be determined. As the District Court found, the consequences to a trainer of even a temporary suspension can be severe; and we have held that the opportunity to be heard must be "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552, [85 S.Ct. 1187, 1191, 14 L.Ed.2d 62] (1965). Here, the provision for an administrative hearing, neither on its face nor as applied in this case, assured a prompt proceeding and prompt disposition of the outstanding issues between Barchi and the State. ... Once suspension has been imposed, the trainer's interest in a speedy resolution of the controversy becomes paramount, it seems to us. We also discern little or no state interest, and the State has suggested none, in an appreciable delay in going forward with a full hearing. On the contrary, it would seem as much in the State's interest as Barchi's to have an early and reliable determination with respect to the integrity of those participating in state-supervised horse racing. In these circumstances, it was necessary that Barchi be assured a prompt postsuspension hearing, one that would proceed and be concluded without appreciable delay. Because the statute as applied in this case was deficient in this respect, Barchi's suspension was constitutionally infirm under the Due Process Clause of the Fourteenth Amendment.

*Barchi, supra,* 443 U.S. at 66, 99 S.Ct. at 2650. *See also Parratt v. Taylor, supra; Mackey v. Montrym, supra; Fusari v. Steinberg,* 419 U.S. 379, 389, 95 S.Ct. 533, 540–41, 42 L.Ed.2d 52 (1975) (prompt and adequate administrative review is a significant factor in assessing the sufficiency of the entire process and provides the critical opportunity for consideration and correction of errors made in the initial suspension

decision); *Ram v. Heckler,* 792 F.2d 444, 447 (4th Cir.1986) (physician suspended from service as a Medicare provider was entitled to a "prompt" postsuspension hearing that should proceed and be concluded without delay, *citing Barchi* ); *Ciechon v. City of Chicago,* 634 F.2d 1055, 1060 (7th Cir.1980) (suspended firefighter has constitutional right to prompt postsuspension hearing and decision); *Finberg v. Sullivan,* 634 F.2d 50, 59 (3d Cir.1980) (fifteen day delay between seizure of property and postseizure hearing too long and therefore Pennsylvania postjudgment garnishment procedures unconstitutional); *Everett v. Napper,* 632 F.Supp. 1481, 1485 (N.D.Ga. 1986) (full hearing must be held within reasonable time after suspension); *Hopkins v. Mayor & Council of City of Wilmington,* 600 F.Supp. 542, 548 (D.Del.1984) (once suspension has been imposed, individual's interest in speedy final resolution of the controversy becomes paramount, *citing Barchi* ); *Angelilli v. Murphy,* No. 79 Civ. 5983 (S.D.N.Y. January 2, 1980) (suspension without a hearing must be followed by prompt postsuspension dispositional hearing).

In the present case, the court perceives no difference between the statute construed in *Barchi* and Rule 208(f). Both statutes provide for emergency suspension pending a full hearing. Neither statute specifies a time or even allows for any means of calculating the time within which the hearing must be held. That is, even *Barchi* required a final order adjudicating the case within thirty (30) days after the conclusion of the hearing, whereas Rule 208(f) specifies no time within which the Disciplinary Board must file its recommendation following the disposition hearing, nor, whenever it does, the time within which the Supreme Court of Pennsylvania must enter its final order adjudicating the case.[4] Plainly, Rule 208(f) is unconstitutional on its face.

■ Aside from the constitutional infirmities of the text of Rule 208(f), it is

---

4. Rule 208(f) provides: "Such orders may require temporary suspension of the practice of

law *pending definitive action under these rules.*" (Emphasis added).

equally unconstitutional as applied by the state. This court notes and agrees that some delay in affording a prompt postsuspension hearing, in and of itself, is not *per se* unconstitutional. If the delay is reasonable, when balanced against the harm to the individual of a prolonged delay, such a delay despite the harm could be constitutional. *See Ritter v. Cohen*, 797 F.2d 119, 123–24 (3d Cir.1986); *Eguia v. Tompkins*, 756 F.2d 1130, 1140–41 (5th Cir.1985) (unless state demonstrates legitimate reasons for delay in affording postdeprivation hearing, such a delay violates due process requirement that plaintiff be given a "meaningful opportunity to be heard to contest deprivation").

In the present case, the evidence presented at the preliminary injunction hearing on June 26, 1986, was that it could take anywhere from six months to two years before the Supreme Court of Pennsylvania enters a final order adjudicating the charges against the plaintiff. The defendants have presented no legitimate reasons for such a delay. In fact, the testimony presented at the preliminar injunction and stay hearing demonstrate that the delay is totally unreasonable. The court finds that the predominate reasons advanced by the state for such a delay are as follows:

1) The Office of Disciplinary Counsel chose not to proceed with complaints from 1984 which were already approved for discipline, and instead chose to consolidate those complaints with new complaints which to date still need initial approval. Furthermore, the hearing will now take much longer because there are so many complaints to be heard which involve many more witnesses than if disciplinary counsel had proceeded immediately with the 1984 cases already approved. (*See* Partial Transcript—Argument at pp. 33–34, 36).

2) It takes at least two months before a hearing can even be scheduled. (*See* Partial Transcript—Argument at p. 36).

3) The hearing before the hearing committee will take a long time to complete because the hearing committee members, who are volunteers, are not available on consecutive days. (*See* Partial Transcript—Argument pp. 36–37).

4) The Supreme Court of Pennsylvania is extremely busy with other matters and consequently, even after Disciplinary Board completes its recommendation to the state supreme court, it could take up to an additional three months when the Pennsylvania Supreme Court next has its administrative session—which is the session allotted to disciplinary matters. (*See* Transcript of Stay Hearing at pp. 12–13).

This court finds that all of the above reasons, individually or in any combination, furnish what can only be characterized as unreasonable delays.

First, it is inconceivable that all of the complaints assembled would have to be heard at once. It is likely that one or two of the serious charges could be bifurcated, narrowed to the basics, and promptly disposed of on an expedited basis. Evidence at the preliminary injunction hearing was presented that there are about 15–20 interim emergency suspension cases in all of Pennsylvania. (*See* Transcript of Stay Hearing at p. 21). Surely most of these cases are either easy to prove (i.e., commission of a crime or similar conduct already of record), or would not be contested.

Second, there is absolutely *no* reason why it should take two months to *schedule* a hearing. The luxury of the emergency suspension authority must be paired with imagination and innovative resolve to do things differently in the handful of cases involved.

Third, that the hearing committee members, who are volunteers and have many other concerns and duties, are not available to allow an expedited hearing which could be accomplished in consecutive days, while understandable, does not relieve the defendants from their due process obligations. The state supreme court chose who they wanted to serve as hearing members and consequently, in these emergency matters, could find some means to appoint persons to hear these cases promptly.

Fourth, that the Pennsylvania Supreme Court because of its busy schedule cannot

convene on disciplinary matters more frequently than every three months is both unfortunate and unacceptable.

Finally, the court is not convinced that any delay in the dispositional hearing is necessary to afford disciplinary counsel further time to investigate the allegations, compile documents and/or interview witnesses. A review of the petition for interim suspension shows that the bulk of this investigation is already complete. This is further evidenced by the fact that the majority of the evidence and witnesses were presented at the special hearing before Disciplinary Board member Helwig.

Simply put, when the Pennsylvania Supreme Court imposes its emergency suspension rule to suspend an attorney prior to a hearing, it cannot then proceed with the same procedures it affords an attorney who has been charged with disciplinary misconduct but is not suspended during the disciplinary process. This, however, is precisely how the current rule is written and applied. If the state believes that the prospect of serious professional infractions by attorneys requires an emergency suspension rule similar to Rule 208(f), it clearly has the right to adopt and apply such a rule. In doing so, however, the grave consequences that justify the promulgation and exercise of such authority must also carry over to the disposition side of the fulcrum to assure a constitutionally prompt final decision. The Fourteenth Amendment to the United States Constitution will not allow a disciplinary system charged with adjudicating and punishing professional wrongdoing to fiddle, while constitutionally protected property interests burn on the pyre of accusation.[5]

The delay is in large part unreasonable because of the severe and irreparable effect on the plaintiff each day he is suspended. The first factor to be considered under *Mathews v. Eldridge, supra,* is "the private interest that will be affected by the official action." In the case at bar, plaintiff is deprived of his very livelihood. Here the plaintiff has spent 35 of his 65 years practicing law. The damage plaintiff suffers is incalculable and irreparable. As Justice Brennan accurately reflected in *Barchi:*

> [T]he District Court found that, in harness racing, even a temporary suspension can irreparably damage a trainer's livelihood. Not only does a trainer lose the income from races during the suspension, but also, even more harmful, *he is likely to lose the clients he has collected over the span of his career.* (Footnote omitted). Where, as here, even a short temporary suspension threatens to inflict substantial and irreparable harm, an "initial" deprivation quickly becomes "final," and the procedures afforded either before or immediately after suspension are *de facto* the final procedures. A final full hearing and determination after Barchi had been barred from racing his horses and had lost his clients to other trainers was aptly described by the District Court as an "exercise in futility," 436 F.Supp., at 782, and would certainly not qualify as a "meaningful opportunity to be heard at a meaningful time." To be meaningful, an opportunity for a full hearing and determination must be af-

---

**5.** Defendants have failed to adequately address the constitutionality of the postsuspension procedures afforded when an attorney is suspended under Rule 208(f). For example, in their brief to the court of appeals, defendants concede that *Barchi* requires a prompt postsuspension dispositional hearing, but contend that the procedures provided under Rule 208(f) satisfy all process that is required. (*See* Brief of Appellants at 17). Yet all of the procedures cited by defendants in support of their contention that *Barchi* has been satisfied are *pre*suspension procedures. This court agrees that, assuming *prompt* postsuspension procedures satisfy due process requirements, the cited *pre*suspension

procedures are sufficient to justify emergency interim suspension. None of the procedures cited by defendants, however, are relevant to a determination of the constitutionality of the *post*suspension processes. Defendants simply have not, and in this court's opinion, cannot refute the clear application of *Barchi* and its progeny to the case at bar. The clear dictates of *Barchi* lead to the irrefutable conclusion that Rule 208(f)'s failure, on its face and as applied, to provide a prompt postdeprivation dispositional hearing on the merits of the disciplinary allegations against plaintiff render the Rule unconstitutional.

forded at least at a time when the potentially irreparable and substantial harm caused by a suspension can still be avoided—i.e., either before or immediately after suspension.

443 U.S. at 73–74, 99 S.Ct. at 2653–54 (Brennan, J., concurring in part). *See also Ritter v. Cohen*, 797 F.2d 119, 123–24 (3d Cir.1986) (unreasonable delay in providing postdeprivation hearing to individual deprived of livelihood violates due process).

The due process violations which the Supreme Court was concerned about in *Barchi* has unfortunately already been realized in the present case. Plaintiff has been expelled from the legal profession for nearly three months, and yet, to date no petition has been served on plaintiff—no procedure associated with finality has been formally scheduled or commenced.

Defendants have taken the position that the Due Process Clause only requires a prompt hearing before the Disciplinary Board but not a final disposition by the Pennsylvania Supreme Court. (*See* Transcript of Stay Hearing at pp. 9–13). The Due Process Clause, however, requires a "meaningful" opportunity to be heard. *See Cleveland Board of Education v. Loudermill, supra*, 470 U.S. at 532, 105 S.Ct. at 1495. As previously noted, on August 1, 1986, following a special 4-day hearing ordered by the state supreme court, Disciplinary Board member Helwig determined that plaintiff's emergency interim suspension was inappropriate and recommended that he immediately be allowed to resume the practice of law. It took the Supreme Court of Pennsylvania fifteen days to act upon this recommendation—an additional fifteen days in which plaintiff was needlessly and unreasonably denied his right to practice his profession. Defendants have taken the position that "[w]hile the Recommendation of the Hearing Examiner was timely filed ... since it is a report and recommendation, the [Supreme] [C]ourt [of Pennsylvania], as any court, is entitled to review and deliberate the matter." (*See* Appellants' Response to Motion to Dismiss the Stay at ¶ 3). This court can envision no possible reasonable explanation for this delay. Clearly, a prompt *hearing* before the Disciplinary Board is not a "meaningful" opportunity for the plaintiff to be heard. "To be meaningful, an opportunity for a full hearing and determination must be afforded at least at a time when the potentially irreparable and substantial harm caused by a suspension can still be avoided." *Barchi, supra*, 443 U.S. at 73–74, 99 S.Ct. at 2653–54 (Brennan, J., concurring in part). Despite the Board member's recommendation, plaintiff could remain suspended indefinitely because the Pennsylvania Supreme Court is under no time constraint within which it must act. Due process, therefore, unquestionably requires a *prompt* final *disposition* of the issues upon which the state has deprived the plaintiff of his property right. *See Mackey v. Montrym*, 443 U.S. 1, 29 n. 7, 99 S.Ct. 2612, 2626, n. 7, 61 L.Ed.2d 321 (1979) (Stewart, J., dissenting); *Ciechon v. City of Chicago*, 634 F.2d 1055, 1060 (7th Cir.1980).

CONCLUSION

The charges against this attorney have not yet even been agreed upon by his accusers and the prospect of the state's cumbersome machinery operating to determine if the charges are true or not will reach into future months and possibly years by the state's own admission. While the state supreme court may be compelled to embrace a system that produces such a result for reasons that it believes are sound, this court, in obedience to solemn pronouncements of constitutional necessity by the United States Supreme Court, cannot allow the state system to operate once the plaintiff has made a proper showing in this court of constitutional deprivation, as plaintiff has preliminarily shown. The time to learn if plaintiff is able to fully satisfy his burden of proof is now. This court cannot and will not allow any further delay in the prompt disposition of the constitutional questions before this court. The defendants' motion to stay the final hearing will be denied.[6]

An appropriate Order will be entered.

6. Notwithstanding defendants' interlocutory appeal, this court is empowered to proceed to the

merits of plaintiff's constitutional claims. *See* Wright & Miller, Federal Practice and Procedure: Civil § 2962; Fed.R.Civ.Pro. 62(c). All necessary discovery on the constitutional issues has been completed.

On August 18, 1986, counsel for defendants stated in open court that plaintiff's case should be dismissed because on August 15, 1986, an order was entered reinstating plaintiff to the practice of law, which carried with it the withdrawal of Disciplinary Counsel's motion seeking to hold plaintiff in contempt for refusing to comply with all of the terms of the May 28th emergency interim suspension order. Counsel further stated that defendants would withdraw their appeal of this court's preliminary injunction order of June 26, 1986. A checking of the appellate court docket at 11:00 A.M. on the date of this Order disclosed that this has not been done yet. Counsel also stated in open court that it would not invoke Rule 208(f) against this plaintiff but considers the Rule available for

enforcement with respect to all other attorneys currently suspended or who would be eligible for such sanction in the future. Finally, counsel suggested that defendants were considering the drafting and possible promulgation of a new rule in the future.

None of this new material causes this court to conclude that a stay is either justified or appropriate. Furthermore, to the extent defendants seek to have plaintiff's complaint dismissed, that oral motion is denied. What defendants' counsel either fails to understand or refuses to accept is that this court, on June 26, 1986, ruled that Rule 208(f) violates the Fourteenth Amendment to the Constitution of the United States. Though that injunction was stayed for a brief period, which stay has since expired, it was neither vacated nor set aside. Consequently, the ruling of unconstitutionality is in effect *now,* and has been so since August 8th, as applied to plaintiff as well as *all* other attorneys who could come under the Rule's coverage.