Harold B. FINK, President Judge, Fifty-Fifth Judicial District, Potter County; and People For Justice, Plaintiffs,

v.

SUPREME COURT OF PENNSYLVANIA, Robert N.C. Nix, Jr., Chief Justice of Pa., Judicial Inquiry and Review Board of the Supreme Court of Pa., Honorable James E. Rowley, Chairman of the Judicial Inquiry and Review Board; Robert Keuch, Executive Director of Judical Inquiry and Review Board; Robert L. Potter, Esquire, Special Prosecutor of the Pennsylvania Judicial Inquiry and Review Board, Defendants.

Civ. No. 86–1405.

United States District Court,
M.D. Pennsylvania.

Jan. 16, 1987.

See also, D.C., 646 F.Supp. 569; D.C., 654 F.Supp. 437.

Clifford A. Rieders, Rieders, Travis, Mussina, Humphrey & Harris, Williamsport, Pa., for plaintiffs.

Howland W. Abramson, David R. Weyl, Philadelphia, Pa., for defendants.

## OPINION

MUIR, District Judge.

### I. Introduction.

This case is on our January 1987 trial list for purposes of Plaintiffs' application for a preliminary injunction. On October 29, 1986, the Defendants filed a motion to dismiss the complaint. A supporting brief was filed on November 12, 1986. A brief in opposition was filed December 8, 1986. No reply brief has been filed. This matter is now ripe for our consideration.

This is a civil rights action brought by Common Pleas Judge Harold B. Fink and a group of citizens denominated as the People for Justice. The Defendants are the Supreme Court of Pennsylvania, the Chief Justice of the Supreme Court of Pennsylvania, the Judicial Inquiry and Review Board of the Supreme Court of Pennsylvania (hereafter Board), the Chairman of the Board, the Executive Director of the Board and the Special Prosecutor of the Board. The complaint which requests injunctive relief was filed on October 7, 1986.

An order of the Supreme Court of Pennsylvania of July 29, 1986, reads in its entirety: "ORDERED, That HAROLD B. FINK, President Judge, Fifty-fifth Judicial District, Potter County, be and hereby is assigned to perform administrative and non-decisional judicial duties until further Order of the Court." No reasons, background or authority are set forth in this cryptic document. The reassignment is in essence a suspension from performing judicial duties. Judge Fink is currently allowed to handle only a few ministerial functions. The suspension is of an indeterminate nature. Judge Fink and the People for Justice have sued to restore Judge Fink to his former status.

The complaint alleges that the order of July 29, 1986 was issued in contravention of Article V §§ 10 & 18 of the Pennsylvania Constitution of 1968 and in violation of the due process clause of the Constitution of the United States. Judge Fink and the People for Justice allege that the order removing Judge Fink was neither preceded by nor followed by a proper hearing. The order allegedly was not made after a recommendation by the Board pursuant to the Board's own rule 16. The Plaintiffs allege that the formal Board proceedings to date have consisted of only one hearing on October 15, 1986. The Defendants allege that they have fully complied with the requirements of the Pennsylvania and United States Constitutions and have therefore filed the motion to dismiss which is the subject of this opinion.

In considering a motion to dismiss, we must liberally construe the complaint and view it in the light most favorable to the Plaintiffs. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The factual allegations contained in the complaint and every inference fairly deducible therefrom must be accepted as true. *United States v. Mississippi*, 380 U.S. 128, 85 S.Ct. 808, 13 L.Ed.2d 717 (1965). Furthermore, we may not dismiss at the pleading stage a civil rights action unless it appears beyond doubt that the Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Scher v. Board of Education*, 424 F.2d 741, 744 (3d Cir.1970). Applying these principles to the

complaint we address the grounds upon which the Defendants base their motion.

## II. The Abstention Doctrines.

The Defendants argue that precedent requires this Court to abstain from exercising jurisdiction over this suit. Defendants contend that the primary purpose of the Plaintiffs' lawsuit is to obtain injunctive relief against an arm of the state and therefore the abstention doctrines enunciated in the cases of *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), *Railroad Comm. of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) apply. We shall discuss the applicability of each of these cases *seriatim*.

### A. *Burford* abstention.

In *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1942), Sun Oil Company brought suit in the United States District Court against the Texas Railroad Commission to enjoin it from permitting Burford to operate oil wells in the East Texas Oil Field. Jurisdiction was based on diversity of citizenship and denial of due process. The issue was whether the district court should have declined to exercise jurisdiction as a matter of equitable discretion. The production of oil in Texas was governed by a comprehensive and complicated regulatory system structured to conserve oil. Texas was concerned with the impact of the oil industry on the entire economy of the state. Texas had established a system of thorough judicial review of administrative decisions. To secure uniformity of interpretation and to prevent confusion by multiple review the Texas legislature provided for the concentration of all direct review of the Texas Railroad Commission's orders in the Texas District Court of Travis County. That Court had the responsibility of coordinating with the Commission in regulating the oil industry.

■ The *Burford* Court held that the United States District Court should have dismissed the complaint on the ground that the issues involved specialized knowledge of state policy and a complex regulatory system. Because the regulations surrounding the oil industry involved basic problems of state policy. the *Burford* Court concluded that federal intervention would cause conflicts of interpretation of state law and under such circumstances a sound respect for the independence of state action required that the federal court stay its hand. *Burford*, 319 U.S. at 334, 63 S.Ct. at 1107. Nonetheless, when the administrative agency has no more expertise in the area drawn into question than does the federal court, *Burford* abstention is not applicable. *Baltimore Bank for Cooperatives v. Farmers Cheese Cooperative*, 583 F.2d 104, 108 (3d Cir.1978). *Burford* abstention also does not apply to cases based on federal rather than state constitutional rights. *Harris v. Pernsley*, 755 F.2d 338, 344 (3d Cir.1985).

■ The Pennsylvania Constitution of 1968 prescribes an exact scheme for the investigation and discipline of judges. It is the Plaintiffs' contention that the order of July 29, 1986 was issued *outside* of the procedures outlined in the Constitution of 1968, Article V, §§ 10 & 18 and in violation of the United States Constitution. The Plaintiffs do not ask that we interpret Pennsylvania law. Instead, they base their claims on federal due process rights. The Plaintiffs' suit is not likely to involve technical issues that are more readily understood by the Board than by us. A final ruling by this Court regarding the Plaintiffs' constitutional claims should not result in inconsistent decisions regarding the regulatory system for disciplining judges. Indeed, if the Board's procedures are inconsistent with the mandate of the United States Constitution, then those procedures must be changed. Thus, because no challenge is made to the policies or regulations of the Board and because the Board probably has no greater expertise in this area than the Court, *Burford* abstention is inapplicable.

### B. *Pullman* Abstention.

■ In *Pullman,* the Supreme Court enunciated the policy that where a state proceeding can obviate the need to reach a federal constitutional question, it is appropriate for a federal court to abstain pending the outcome of state proceedings. Defendants argue that state proceedings can result in the vindication of Judge Fink and that it is therefore proper for this Court to stay its hand to promote the policies underlying *Pullman.* We disagree for three reasons.

First, *Pullman* suggests that a federal court not dismiss a case but rather retain jurisdiction in a case where state law is challenged on constitutional grounds and an interpretation of state law suggested by the Defendants might make unnecessary a decision on the constitutionality of the state law. *See e.g., Spector Motor Serv., Inc. v. McLaughlin,* 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944). State law is not being attacked in this case. No state statute requires our interpretation. Rather, drawing inferences in favor of the Plaintiffs, it is alleged that the Supreme Court of Pennsylvania has acted arbitrarily and capriciously to remove Judge Fink from the bench. It is asserted that the Supreme Court of Pennsylvania has acted outside of its authority as outlined in state law and, more importantly, in contravention of the dictates of the United States Constitution. It is unlikely that *Pullman* abstention is ever proper in a case which is predicated directly on the Constitution of the United States rather than the interpretation of a statute.

Second, the construction of law offered by the Defendants would not obviate the need to reach the federal question. The Defendants steadfastly assert that Judge Fink has received all of the process which is due him under the United States Constitution and that the Supreme Court of Pennsylvania has complied with all the procedures of Pennsylvania law. Because Defendants include the Supreme Court of Pennsylvania and Defendants assert that the law has been complied with, it would be futile to require Judge Fink to attempt to obviate the need to reach a federal question by resorting to the Supreme Court of Pennsylvania.

■ Last, the *Pullman* doctrine is a rule of discretion. We choose to exercise our discretion by not abstaining. Thus, *Pullman* and its progeny are not an adequate ground upon which to base the motion to dismiss. This is simply not a situation where there is a state law which could reasonably be construed by the state Supreme Court in a manner which would avoid the necessity to decide the constitutional claim. *See Duke v. James,* 713 F.2d 1506 (11th Cir.1983).

### C. *Younger* Abstention.

■ *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and cases following it espouse a policy against federal court interference with pending state court proceedings absent extraordinary circumstances. *Younger* is rooted in the notion of comity. Federal courts are obliged to give a proper respect to the state courts in recognition of the fact that our nation is made up of a union of separate states and a belief that society will fare best if the states and their institutions are left free to perform their separate functions in their separate ways. *Younger,* 401 U.S. at 44, 91 S.Ct. at 750. The policies underlying *Younger* are applicable to non-criminal judicial proceedings when important state interests are involved. *Moore v. Sims,* 442 U.S. 415, 423, 99 S.Ct. 2371, 2377, 60 L.Ed.2d 994 (1979). The *Supreme Court in Middlesex County Ethics Comm. v. Garden State Bar Ass'n.,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), held that disciplinary proceedings involve the kind of state interests which come within the ambit of the *Younger* doctrine. Thus, we must inquire, as did the Court in *Middlesex,* whether there has been an adequate opportunity in the state proceedings to raise constitutional challenges. *Id.* 457 U.S. at 433, 102 S.Ct. at 2521. Dismissal of a complaint under the *Younger* doctrine is required only where successful defense of

state court proceedings would fully vindicate the federal court plaintiffs' federal rights. *Foley v. Alabama State Bar*, 648 F.2d 355, 360 (5th Cir.1981). Abstention should not be applied when a complainant alleges bad faith, harassment or extraordinary circumstances. *Middlesex*, 457 U.S. at 435, 102 S.Ct. at 2523; *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). We shall apply these principles to the case before us.

▪ It is clear from the Plaintiffs' complaint that they are alleging bad faith and extraordinary circumstances. For the purposes of a motion to dismiss, these allegations and every inference fairly deducible therefrom must be accepted as true. *United States v. Mississippi*, 380 U.S. 128, 85 S.Ct. 808, 13 L.Ed.2d 717 (1965). Assuming that the facts alleged by the Plaintiffs are true, then we must assume that the Supreme Court of Pennsylvania issued its order of July 29, 1986, without having had a recommendation from the Board and without the Board having adhered to its own procedures and the procedures outlined in the Pennsylvania Constitution of 1968. Such action outside of the mandate of the Pennsylvania Constitution of 1968 would be clearly wrong and could be evidence of bad faith. *See First Amendment Coalition v. Judicial Inquiry and Review Board*, 501 Pa. 129, 460 A.2d 722 (1983); Woodside, *Pennsylvania Constitutional Law* (1985) at p. 435–36. This same activity could be termed exceptional circumstances because the Pennsylvania Supreme Court is not empowered to act to suspend, remove or discipline a Common Pleas Judge without a recommendation to act from the Board. Pennsylvania Constitution of 1968, Article V, § 18; *First Amendment Coalition*, 460 A.2d at 724; *Woodside* at 435. The *Younger* abstention doctrine should not be applied in this case because of the allegations of bad faith and exceptional circumstances. Nevertheless, Defendants strongly argue that regardless of the Plaintiffs' allegations of bad faith and exceptional circumstances, the Supreme Court's pronouncement in *Middlesex* prevents our acting. We disagree.

In addition to stating expressly in *Middlesex* that bad faith and extraordinary circumstances are exceptions to the *Younger* doctrine, *Middlesex*, 457 U.S. at 435, 102 S.Ct. at 2523, the Court held that a pending state court proceeding could not be enjoined when an attorney had been given (1) an opportunity to raise constitutional issues at the state court level and (2) it appeared that the state court was willing to decide the constitutional issues in a timely fashion. *Id.* at 438, 102 S.Ct. at 2524. In *Middlesex* an attorney was notified that a disciplinary review of his conduct was to commence. He was then given a list of formal charges and time to respond. Rather than responding he filed suit in federal court. The attorney had not been suspended pending the investigation and was not suspended on the date he filed suit. The Supreme Court of the State of New Jersey, cognizant of the filing of the federal suit, sua sponte offered to entertain the constitutional issues which the attorney had presented in federal court. Based on this factual record and the absence of bad faith or extraordinary circumstances, the Supreme Court in *Middlesex* held that *Younger* abstention should be applied.

In Judge Fink's case, the facts are radically different. Judge Fink was removed from the bench without an opportunity to defend himself pending a continuing investigation. The Supreme Court of Pennsylvania has not on its own motion agreed to consider the constitutional issues raised by Judge Fink. Indeed, the Supreme Court of Pennsylvania through its counsel has argued to this Court that its order of July 29, 1986, is constitutional in all respects. Therefore, it would not be proper for this Court to hold on the basis of the *Younger* doctrine that abstention is required so that the Supreme Court of Pennsylvania can address the constitutional issues. Furthermore, the *Middlesex* Court stated that abstention was warranted because the New Jersey Supreme Court had acted in a *timely* fashion. There is certainly a substantial question in this case as to whether the Defendants are acting in a timely manner.

Abstention under *Younger* is inappropriate.

### III. Subject Matter Jurisdiction.

Defendants argue that this Court lacks subject matter jurisdiction over this case for two reasons. First, Defendants contend that the Plaintiffs' complaint is in essence an appeal from the State Supreme Court's decision to reassign or to suspend a trial judge and the power to review such is solely vested in the Supreme Court of the United States pursuant to 28 U.S.C. § 1257. Second, Defendants argue that the Eleventh Amendment to the United States Constitution precludes the granting of the injunctive relief sought by the Plaintiffs. We shall address both contentions.

■ 28 U.S.C. § 1257 applies in relevant part only to the final judgment of a state's highest court where a decision has been rendered as to the constitutionality of a state statute or where a state statute is attacked on the ground that it is repugnant to the Constitution or the laws of the United States. Judge Fink and the People for Justice are not attacking Pennsylvania's Constitution or the rules promulgated thereunder which govern the Supreme Court of Pennsylvania and the Board in the performance of their disciplinary functions. Plaintiffs' complaint is precisely the opposite. They contend that Judge Fink was not afforded his due process rights specifically because the Board and Supreme Court did not comply with the provisions of the Pennsylvania Constitution of 1968 and the Rules promulgated thereunder. Defendants cite the case of *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) to support their position that 28 U.S.C. § 1257 bars Plaintiffs' suit. *Feldman* is not applicable. *Feldman* was a challenge to the validity of a rule which prohibited certain persons from sitting for the District of Columbia bar examination. No rule is being attacked here. The validity of no state law has been drawn into question.

■ Defendants argue that the Plaintiffs' complaint is in essence a demand for injunctive relief to assure that the Board and the Pennsylvania Supreme Court comply with Pennsylvania's own statutes and regulations. Defendants contend that such an order is specifically prohibited by the Eleventh Amendment. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The *Pennhurst* Court held that federal courts should not exercise *pendent* jurisdiction to order state institutions to comply with state law. Any order from this Court would be an order to comply with the mandate of the due process clause of the Constitution of the United States. Furthermore, the Court in *Pennhurst* specifically stated that a suit challenging the constitutionality of a state official's action is not one against the state and as such is not barred by the Eleventh Amendment. *Pennhurst*, 465 U.S. at 102, 104 S.Ct. at 909; *see also Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Plaintiffs' case fits squarely into this exception. They are not attacking the Commonwealth or the laws of the Commonwealth but they are alleging that the Supreme Court of Pennsylvania, the Board and the Chairman, Executive Director and Prosecutor of the Board have acted outside both state and federal law. A United States district court may always act and indeed may be obliged to act when suit alleging violations of federal law is brought against state officials. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Quite simply, the issue before us, without reference to the niceties of exact compliance with Article V, §§ 10 & 18 of the Pennsylvania Constitution of 1968, is whether *before* the suspension or in a *timely fashion thereafter* the Honorable Harold B. Fink was given notice of the charges against him and an opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Barry v. Barchi*, 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979); *Gniotek v. City of Philadelphia*, 808 F.2d 241, 244–246 (3d Cir.1986); *see*

*generally Gershenfeld v. Justices of the Supreme Court*, 641 F.Supp. 1419 (E.D.Pa. 1986). Although we are satisfied that we have subject matter jurisdiction in this case, we comment on a lengthy quotation from the case of *Erdman v. Stevens*, 458 F.2d 1205, 1210 (2d Cir.1972) which Defendants cite as authority for the proposition that we have no such jurisdiction. The *Erdman* Court stated: "It requires little vision to appreciate that if a state court were subject to the supervisory intervention of a federal overseer at the threshold of the court's initiation of a disciplinary proceeding against its own officer, the state judiciary might suffer an unfair and unnecessary blow to its integrity and effectiveness." *Id.* at 1210. It is our view that the Fink matter is far beyond the threshold. We fully agree with Judge Bechtle when he stated that: "The Fourteenth Amendment to the United States Constitution will not allow a disciplinary system charged with adjudicating and punishing professional wrongdoing to fiddle while constitutionally protected property interests burn on the pyre of accusation." *Gershenfeld v. Justices of the Supreme Court of Pennsylvania*, 641 F.Supp. 1419, 1427 (E.D.Pa.1986). We have jurisdiction.

## IV. Failure to State a Cause of Action.

 The Defendants argue that the Plaintiffs have failed to state a cause of action because the order of July 29, 1986, is not a suspension but merely an assignment made pursuant to the Pennsylvania Constitution of 1968, Article V, §§ 10 & 18. Additionally, even if it were a suspension, Defendants assert that there is no deprivation of a property right or liberty interest without due process of law. We disagree. As we have already stated, the "... assignment is tantamount to a suspension." *Fink v. Supreme Court of Pennsylvania*, 646 F.Supp. 569, 572 (M.D.Pa.1986). Moreover, if we view the order of July 29, 1986 as a reassignment rather than a suspension, it is not clearly an assignment made pursuant to the authority vested in the Supreme Court of Pennsylvania by the Pennsylvania Constitution of 1968, Article

V, §§ 10 & 18. *See First Amendment Coalition v. Judicial Inquiry and Review Board*, 501 Pa. 129, 460 A.2d 722, 724 (1983); Woodside, *Pennsylvania Constitutional Law* (1985) at 435.

Section 10 of the Pennsylvania Constitution specifically gives the Supreme Court of Pennsylvania the authority to "... temporarily assign judges from one court or district to another as it deems appropriate." The assignment here was not from one court to another but from acting as a full judicial officer to acting in only a minimal non-adjudicatory fashion.

Section 18 allows for suspension but only under the procedures therein described. Plaintiffs allege that the procedures set forth in the Pennsylvania Constitution of 1968 and the Rules promulgated thereunder have not been followed. For the purpose of a motion to dismiss, this allegation must be accepted as true and therefore, Defendants' argument that Judge Fink's assignment was made pursuant to the Pennsylvania Constitution of 1968 is not a ground upon which we may dismiss this case.

 Defendants also argue that Judge Fink and the People for Justice have been deprived of no property or liberty interest. Although Judge Fink's income has not been reduced and he is at least nominally still President Judge of Potter County, his reputation and liberty interest therein may be diminished. This liberty interest grows greater as time elapses because Judge Fink must within the next several months indicate of record his intention to run for re-election if he decides to do so. We have already stated that the People for Justice have at best a minimal interest in the outcome of this matter. Nevertheless, the interest, though small is cognizable.

 Assuming that there has been a deprivation of a liberty interest, the Defendants contend that such deprivation has not occurred without due process of law because there are adequate pre- and post-deprivation remedies. The Defendants contend that the hearing to be conducted by

the Board will provide the Plaintiffs with these remedies. The key flaw in this argument is that the Defendants argue that the Board and Supreme Court "will provide" a remedy. They do not state when. It is not sufficient merely to have a pre- or post-deprivation remedy. The remedy must be accorded in a timely fashion. *See Matthews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Gniotek v. City of Philadelphia,* 808 F.2d 241, 244–246 (3d Cir.1986); *Gershenfeld,* 641 F.Supp. at 1427. The Plaintiffs have stated a cause of action upon which relief may be granted.

### V. Remedy at Law.

■ The Defendants argue that this Court should not grant the equitable relief requested because the Plaintiffs have an adequate remedy at law. Defendants state that the Plaintiffs can obtain review by the State Supreme Court of the order of July 29, 1986. Defendants assert that the Plaintiffs "... could have filed a petition for reconsideration [pursuant to] Pennsylvania Rule of Appellate Procedure 311(4)" or "... could have treated the order as an injunction" and moved to have it dissolved pursuant to Pennsylvania Rule of Civil Procedure 1531(c) or "... could have viewed the order as a final order" and filed a petition for writ of certiorari, 28 U.S.C. § 1257. These arguments are without merit. None of these remedies squarely fit the situation in which the Plaintiffs find themselves. Rule 311(a)(4) of the Pennsylvania Rules of Appellate Procedure applies to injunctions and allows for an appeal as of right from an order effecting an injunction. The order of July 29, 1986 is not an injunction but a purported reassignment of Judge Fink. Pennsylvania Rule of Civil Procedure 1531(c) also allows for a party to move at any time to dissolve an injunction and is as inapplicable as Rule 311(a)(4). As a practical matter the Supreme Court of Pennsylvania through its counsel has insisted that Judge Fink and the People for Justice have not been deprived of any constitutional rights. It would appear to be fruitless to dismiss this complaint simply to require the Plaintiffs to seek review from the Supreme Court of Pennsylvania under Rule 311(a)(4) or 1531(c). Finally, as we have stated above, 28 U.S.C. § 1257 does not apply. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

### VI. Laches.

■ Defendants argue that the Plaintiffs are guilty of laches because they did not file this suit in federal court until two months after the order of July 29, 1986. The waiting of two months before the filing of suit in federal court is not dilatory behavior but diligent behavior. This is a rather curious argument for the Defendants to make when the Board has apparently done little in Judge Fink's case in over a year and the Supreme Court of Pennsylvania has done nothing in over five and a half months. There are no laches in this case at least on the part of the Plaintiffs.

### VII. Clean Hands.

■ The Defendants also contend that the doctrine that a Plaintiff may not come into a court of equity unless he has clean hands applies to this case. Defendants argue that Judge Fink has unclean hands because he has attempted to make the Board's apparent non-compliance with its procedures and the Pennsylvania Constitution of 1968 as well as the federal Constitution a public matter. Additionally, the Defendants allege that Judge Fink has spoken with the press regarding this case. Although Judge Fink's activities may be deemed by some to be inappropriate, they are not evidence of unclean hands.

### VIII. Waiver.

■ Defendants argue that Plaintiffs have waived their right to challenge the Board's proceedings because on July 1, 1986, Judge Fink asked for an extension of time to file an answer to certain charges and additionally on October 17, 1986 Judge Fink and his counsel stipulated to the future scheduling of Board hearings. The Defendants contend that this behavior con-

stitutes a waiver of Judge Fink's assertion that the Board's proceedings are not timely enough to be consistent with due process standards. We disagree. Judge Fink contends that his motion for a continuance was based on inadequate notice and a failure of the Defendants to provide Judge Fink, after a request, with any indication of how discovery and a myriad of procedural matters would be handled at the hearing. One does not waive one's substantive constitutional rights by asking those in authority to define one's procedural rights at the hearing stage. Furthermore, a stipulation as to the scheduling of future hearings evidences to this Court a desire to attempt to cooperate rather than an act which should be construed as a waiver of one's federally protected rights. No waiver exists.

## IX. Standing.

▪▪▪▪ Defendants argue that the People for Justice have no standing under Article III of the United States Constitution to join in this case because they have no concrete stake in the outcome. For this proposition Defendants cite solely the case of *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). In *Flast*, taxpayers challenged the disbursement of funds under the federal Elementary & Secondary Education Act of 1965 which financed the instruction and purchase of educational materials in parochial and sectarian schools. The taxpayers argued that they had standing as taxpayers to sue regarding the disbursement of funds. The Court held that in order to maintain an action challenging the Constitutionality of a federal spending program, taxpayers had to demonstrate that there was a logical link between their status as taxpayers and the type of legislative enactment attacked and additionally had to demonstrate that the challenged statute exceeded a specific constitutional limitation imposed upon the exercise of congressional spending power. *Flast*, 392 U.S. at 102–103, 88 S.Ct. at 1953–1954. The Court in *Flast* held that the taxpayers had satisfied both nexuses to support their claim of standing because they had challenged the authority of Congress pursuant

to Article I, § 8 of the Constitution to spend for the general welfare and because the challenged program involved substantial expenditures of federal funds. *Id.* at 103, 88 S.Ct. at 1954. Under the *Flast* test, the People for Justice need only show that their status as voters has been infringed upon by the order of July 29, 1986 and that the order of July 29, 1986 exceeds constitutional limitations. The People for Justice argue that their votes have been wrongly diluted by the *de facto* removal of the candidate of their choice from his elected position as President Judge of Potter County without due process of law. Since voting is a fundamental right, *Powell v. McCormack*, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969), persons challenging the dilution of their voting rights by an act alleged to be in violation of the United States Constitution may bring suit in a United States District Court.

## X. Order of July 29, 1986.

The Defendants state that the absence of an opinion or memorandum accompanying the order of July 29, 1986 of the State Supreme Court is not an extraordinary circumstance militating against the application of the *Younger* abstention doctrine. Possibly. Nevertheless, the absence of an opinion or explanation of its order of July 29, 1986 is not a ground upon which to base a motion to dismiss. Whether or not an opinion was written to accompany the order of July 29, 1986 is not the issue before us. The issue remains solely whether the Honorable Harold B. Fink was given timely notice of the charges against him and an opportunity to respond and whether he has in fact a speedy and adequate post-deprivation remedy. *Gniotek v. City of Philadelphia*, 808 F.2d 241 (3d Cir.1986).

We have previously voiced our concern about the timeliness of the proceedings regarding Judge Fink. *Fink v. Supreme Court of Pennsylvania*, 646 F.Supp. 569, 572–73 (M.D.Pa. October 30, 1986). We remain extremely concerned about what appears to be a lack of diligence accorded Judge Fink by the Pennsylvania Supreme

Court and its arm, the Board. We see no sign that the Supreme Court of Pennsylvania or the Board has paid any attention to our expressed concerns. It is conceivable that the Defendants decided to defy this Court. That would be a mistake of considerable magnitude. We have no wish for a confrontation with Pennsylvania judicial authorities, particularly the Supreme Court of Pennsylvania. Nonetheless, if Judge Fink is entitled to relief we will grant it and, absent a prohibition by the Court of Appeals or the United States Supreme Court, marshal whatever federal power is necessary to ensure that he receives it.

An appropriate order will issue.

### ORDER

1. Defendants' motion to dismiss Plaintiffs' complaint is denied.

2. The Clerk shall send copies of this order not only to counsel but to each Justice of the Supreme Court of Pennsylvania to assure that the full court is advised of the seriousness with which we view this case and our determination to proceed with dispatch.